# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,
A Natural Person,
Resident of Florida

        and

JOHN DOE #1
A U.S. Citizen Physically in Israel

        and

JOHN DOE #2
A U.S. Citizen Physically in Israel

        and

JOHN DOE #3
A U.S. Citizen Physically in Israel

        and

JOHN DOE #4
A Dual U.S.-Israeli Citizen Physically in Israel

        and

JACK ROE #1
A U.S. Citizen, Family of Victim Killed by HAMAS

        and

JACK ROE #2
A U.S. Citizen, Family of Victim Killed by HAMAS

        and

JACK ROE #3
A Dual U.S.-Israeli Citizen, Family of Victim Killed by
HAMAS

Plaintiffs,

**RICO COMPLAINT**

Civil Action No.  _____

v.

BARACK HUSSEIN OBAMA, acting then
as President of the United States under color of law and
individually

and

HAMAS (in Arabic, an acronym for "Harakat
Al-Muqawama Al-Islamia" -- Islamic Resistance Movement)
As the Government of Gaza, Palestinian Authority

and

MALIK OBAMA, a natural person, and officer of
The Barack H. Obama Foundation, a U.S. corporation

and

HILLARY CLINTON, acting then
as U.S. Secretary of State under color of law and individually

and

JOHN KERRY, acting as U.S. Secretary of State
under color of law and individually

and

BAN KI-MOON, Secretary General of
THE UNITED NATIONS acting individually

Defendants.

* Addresses not listed here for security reasons.

## COMPLAINT PURSUANT TO RICO AND ANTI-TERRORISM LAWS

Plaintiffs sue the Defendants, as individuals and foreign states in their official and

unofficial capacities, for violating Plaintiffs' and decedents' rights, for engaging in racketeering

and other prohibited activities, for engaging in international terrorism, for harboring and

concealing terrorists, for providing material support to terrorists and terrorist groups, for directly

and proximately causing the deaths of Plaintiffs' decedents, and for directly and proximately

causing mental anguish, severe emotional distress, emotional pain and suffering, and the loss of

society, earnings, companionship, comfort, protection, care, attention, advice, counsel or

guidance, Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, have

experienced and will experience in the future. As grounds therefore, Plaintiffs, on behalf of

themselves and their sons, Plaintiffs' decedents, allege as follows:


I.    **INTRODUCTION  AND NATURE OF THE ACTION**

1.  This is a complaint for damages and equitable relief arising out of funding within the

    United States of America – through fraud, money-laundering, mail fraud, wire fraud,

    conversion and corruption – of terrorism, violence, organized crime, and warfare

    committed by HAMAS operating in and around Gaza and Israel.

2.  This is a civil action for Defendants providing funding to Foreign Terrorist Organizations

    (as that term is defined in 8 U.S.C. §1189 of the Antiterrorism and Effective Death

    Penalty Act of 1996 ("AEDPA")) as part of a scheme to encourage and facilitate acts of

    international terrorism as defined by 18 U.S.C. § 2331.[1]

3.  This is a civil action for violations of 18 U.S.C. § 1961 *et seq*. (Racketeer Influenced And

    Corrupt Organizations Act or RICO).  RICO addresses the corrupt abuse and misuse –

    usually covertly – of organizations, entities, businesses, institutions or even governments

    or government agencies, such that superficially legitimate entities actually operate for

---

[1]     This instant complaint is legally valid, well-founded, and proper, being similar to a case
that has already survived legal challenge and is in trial at the time of this filing, in which Arab
Bank is now on trial for providing funding to Hamas, *Linde v. Arab Bank*, Civil Action No. 1:04-
cv-02799-BMC-VVP, U.S. District Court for the Eastern District of New York.

criminal purposes irrelevant to the entity's purpose. In the case of HAMAS and its

terrorist activities, charities claiming to raise funds for humanitarian purposes are in fact

corruptly providing material support for terrorism and laundering money for terrorist

financing. Thus, misuse of the U.S. State Department, United Nations funding, or

government offices to aid and support HAMAS terrorism rather than proper official

purposes violates RICO but is also an injury to, and corruption of, the legitimacy of those

organizations and offices.  That is, RICO contemplates injury to the corrupted

organization itself by being abused, as well as to others in the process.

4. This is an action for violations of 18 U.S.C. §§ 2333, 2339 and 2339A (terrorism related

   activities).

5. This is a civil action for assault and battery, intentional infliction of emotional distress,

   wrongful death, negligence and gross negligence.

## II.  CLASS ACTION STATUS

6. Plaintiffs reserve the right to move the Court to certify this case and its causes of action

   as a class action pursuant to the Federal Rules of Civil Procedure.

## III.  JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331,

   28 U.S.C. § 1332(a)(2), and 18 U.S.C. §§ 2333 and 2334, as a civil action brought by

   citizens of the United States, their estates, survivors, and heirs who have been killed or

   injured by reason of acts of international terrorism.

8. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C.

   §1350 (Alien Torts Claims Act).

9. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1605 (general exceptions to jurisdictional immunity) and 28 U.S.C. § 1605A (terrorism exception to jurisdictional immunity).

10. This Court also has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2).

11. Jurisdiction is also proper under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), in so far as the actions violate the 1st, 4th, 5th, and 15th Amendments to the U.S. Constitution.

12. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13. This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

14. For Defendant HAMAS, this Court has personal jurisdiction and subject matter jurisdiction pursuant to 18 U.S.C. § 2333(a); 28 U.S.C. § 1330(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1332; and 28 U.S.C. § 1605(a)(1) and 28 U.S.C. § 1605A. Venue is proper for Defendant Iran pursuant to 28 U.S.C. § 1391(f)(4).

15. Venue is proper in this district pursuant to 18 U.S.C. § 2334(a) and 28 U.S.C. §§ 1391(b) and 1391(d).


IV.   **STANDING AND THE PLAINTIFF PARTIES**

16. Plaintiff Larry Klayman is a U.S. citizen, a resident of Florida, who was physically present in the nation of Israel before and at the time when Israel came under attack by HAMAS terrorists during this latest war beginning in July 2014 using armed violence

and military force, being caught unaware that he would be placed within this danger.  He was subject to the crimes of attempted murder and of assault by HAMAS, being in range of indiscriminate and untargeted military attacks and within the zone of imminent danger of death and bodily injury.  He was subject to terroristic threats, fear, intimidation and blackmail from HAMAS, aimed at coercing him from the exercise of his legal rights in violation of the Hobbs Act by HAMAS seeking to deny his freedom of travel and public advocacy and business activities in Israel and other activities in Israel by threats and intimidation aimed at coercing him as a person engaged in public advocacy and business activities in and with Israel to leave Israel and disengage with Israel.

17. Plaintiffs John Doe #1, #2, #3, and #4 are U.S. or dual U.S.-Israeli citizens physically present in Israel at the time when Israel, Jews, and Christians came under attack by HAMAS terrorists using armed violence and military force.  They were each in Israel as a Jew or Christian to support the defense of the nation of Israel.  As such, they were subject to the crimes of attempted murder and of assault by HAMAS, being specifically targeted by HAMAS terrorists and so called military soldiers for murder and/or injury. They were subject to terrorist attacks, threats, fear, intimidation and blackmail in violation of the Hobbs Act from HAMAS seeking to coerce them along with other Jews and Christians to abandon the land belonging to the State of Israel as given to them by God as valuable property within the meaning of the Hobbs Act.

18. Plaintiffs Jack Roe #1, #2, and #3 on behalf of themselves and their sons, Plaintiffs' decedent relatives killed by HAMAS in Israel and/or Gaza, have standing to bring this action because they have been directly affected and victimized by the unlawful conduct complained herein.

19. The Plaintiffs' injuries including the deprivation of their legal rights and legally protected choices are proximately related to the illegal conduct of Defendants each and every one of them, jointly and severally.

## V.      THE CORRUPT ENTERPRISE OF FINANCING HAMAS TERROR

20. In large part, this case addresses (among other claims) an illegal RICO "enterprise" to funnel money from within the United States of America from both private and public sources fraudulently under the guise of humanitarian assistance, that category being a lie, in order to knowingly and  willfully and foreseeable finance terrorism by HAMAS and its parent the Muslim Brotherhood, including to acquire land from Israel (being valuable property within the meaning of RICO and the Hobbs Act) by blackmail, blackmail, threats and intimidation, as well as to obtain money ostensibly to alleviate the causes of the violence.

21. This RICO enterprise is a classic organized crime enterprise, addressed within the core purpose of the RICO statute, involving fraud, conversion of funds, blackmail, and violence.

22. A person knowingly finances terrorism when he or she is fully aware of facts that would inform an alert person of average intelligence that the probable results of their actions will be to provide funding to a terrorist organization.  One may not naively turn a blind eye, not even a president of the United States.

23. The law presumes generally that a person intends the obvious results of their actions.

24. HAMAS and all the Defendants raise funds fraudulently and falsely in the name of helping those same so called "Palestinian people" (Jews and Christians who live the vicinity of Israel may also rightly call themselves Palestinians since the land of Palestine

or Zion belongs to them, having been given to them by their God), but use much or all of the money instead to carry out violence, terrorism, and warfare against Israel and Jews and Christians.

25. Vast amounts of charity money, public assistance, international assistance, and humanitarian aid is motivated toward ending the violence, gets diverted to the corrupt enterprise, and becomes money that "fell off a truck" into the hands of the criminals actually causing the violence and their enablers.

26. The Defendants herein knowingly provide funding and other material support to assist HAMAS in its criminal activities, violence, and warfare because they benefit themselves in various ways.  Some provide funding for HAMAS specifically because they support HAMAS' core goals such as furthered by Malik Obama and his co-actors and conspirators, as set forth below.  However, others do not share HAMAS' goals at all, yet seek their own political benefits from countries and interests that are hostile to Jews, Christians and Israel, benefit from connections and accolades from anti-Semitic and anti-Christian international organizations, and/or receive their "cut."

27. Yassar Arafat, for example, amassed a massive fortune of over a billion dollars skimmed from supposed humanitarian assistance both public and private, intended to avoid violence.  Others are now hoping to emulate this achievement.

28. All of the Defendants herein are fully aware that funds and other support provided to HAMAS ostensibly for humanitarian purposes are in fact used to finance HAMAS violence, military activities, and terrorism against Israel, such as building supplies ostensibly for front schools and hospitals being used to dig sophisticated military tunnels

across the border between Gaza and Israel to facilitate murder, kidnapping, hostage

taking, and war.

29. For any Racketeer Influenced and Corrupt Organization (RICO) case, it is important to

distinguish between legitimate organizations, businesses, and even government offices

and the abuse of those entities for illegal purposes by the unofficial, corrupt "enterprise."

30. Congress also specifically targeted criminal enterprises whose essential elements are

spread out among different actors.  One part of the RICO enterprise threatens violence

but asks for no benefit, while other actors collect the pay-off fueled by the threats.

## VI.    FACTS COMMON TO ALL COUNTS

31. By the acts alleged herein, Defendants, each and every one of them, have aided and

abetted and conspired to commit said acts of international terrorism, resulting in the

killing, attempted killing, kidnapping and maiming of scores of American and dual

American-Israeli citizens in Israel since September 2000, and have violated the

prohibitions on providing material support for acts of international terrorism set forth in

the Anti-Terrorism Act ("ATA") as amended by the AEDPA (see e.g., 18 U.S.C. §§

2339A, 2339B and 2339C) and is civilly liable under § 2333 of the ATA to those

American and dual American –Israeli citizens (and their estates, survivors and heirs) who

have been killed, kidnapped or injured in their person, property or business by reason of

such acts of international terrorism

32. All of the Defendants have conspired and collaborated with, aided and abetted plans,

actions, and efforts by and for the benefit of HAMAS to use false and fraudulent

"charitable front organizations" inside the United States of America or active inside the

United States of America to falsely and fraudulently solicit funds and other material

support ostensibly for humanitarian purposes within Gaza as a fraudulent pretext.

33. All the Defendants actually know and/or have reason to know that funds and material

support provided to Gaza under HAMAS's rule are actually used entirely or in the most

part to finance the acts of terrorism, violence, murder, attempted murder, kidnapping,

assault, injury, physical attacks, and other criminal activity by HAMAS complained of

herein, including that seemingly innocent materials like construction materials will be

used to conduct terrorism and warfare against Israel and Jews and Christians.

34. All the Defendants actually know that HAMAS uses concrete and building materials

provided to Gaza under HAMAS's rule overwhelmingly to build home-made rockets

(e.g. street lamp tubes used as rocket structures), and to build highly-sophisticated

underground military bunkers,, underground military weapons factories, and military

tunnels across the border into Israel to facilitate violence, terrorism, attacks, and warfare

against civilians in Israel and for the most part will not actually be used by the

government of Gaza for civilian purposes such as to build housing or schools.

35. All of the Defendants have actual knowledge that funding, material support and aid

provided to Gaza under HAMAS's rule is fraudulently solicited, requested, and

encouraged on false pretenses, such that all Defendants have the intent or full awareness

that at the time that the Defendants directly or indirectly solicit or encourage financial

and/or material support to Gaza that it will in fact be used for an actual purpose of

financing the criminal and terrorist acts by HAMAS which is a different purpose from the

purpose claimed of humanitarian needs claimed while soliciting, requesting or

encouraging it.

36. In these acts and conspiracy, Defendants use and rely upon fraudulent "charitable front organizations" to falsely funnel funds and material support to HAMAS as a Foreign Terrorist Organization.

### A. **Defendant Barack Hussein Obama and His Relevant Acts and Conspiracy**

37. A public official can be personally liable for abuse, corruption, or misuse of public office as these acts are not part of his or her official sanctioned duties.

38. In his position as President of the United States and a former United States Senator, Defendant Barack Hussein Obama personally and actually knows that HAMAS is officially designated as a "Foreign Terrorist Organization" by the United States Department of State and in fact engages in terrorism, including by HAMAS diverting resources supplied by any source designated for any supposed purpose to support HAMAS' terrorist attacks.

39. In 2009, Defendant Barack Hussein Obama ordered that $900 million be sent to Gaza, in the middle of a financial crisis in the United States, knowing that in contrast with the stated purpose much of the $900 million would be used by HAMAS in  Gaza through murder, kidnapping, violence, threats and intimidation by HAMAS oppressing Gaza like an organized crime syndicate, as well as for HAMAS to attack Israel and Jews and Christians and international visitors present inside Israel and for HAMAS to commit murder, kidnapping, attempted murder, violence, assault, kidnapping, hostage taking, threats, and intimidation against Israel and international visitors present inside Israel. Because HAMAS – which was voted by the people of Gaza to rule them, and because HAMAS rules Gaza by violence, no resources can separated from HAMAS' violent rulers.

40. On August 24, 2014, when Israel killed a key HAMAS financial official responsible for "terror fund transactions" Mohammed al-Ghoul in Gaza City with a missile strike, witnesses report that U.S. dollars were found in his wrecked car.  According to the Voice of America, [2] al-Ghoul helped transfer money to build terror infrastructure in Gaza, including tunnels used by HAMAS militants to sneak into the Jewish state for attacks.

41. But the HAMAS money man in Gaza wasn't transporting only a few dollars.  According to The New York Times, [3] the Israeli attack on al-Ghoul's car broke open the car, "revealing bags of American dollars inside and scattering currency on the street, some burned by the blast, according to a witness."

42. Although "security men in plain clothes prevented photographers from taking photographs there, kept onlookers away," the witness reported in The New York Times that the HAMAS security men collected the "***bags***" of American dollars but then went back to the damaged car looking for even more bags of U.S. currency. [4]

43. So the HAMAS financial leader known to funnel money from the West to HAMAS was carrying so many "***bags***" of U.S. dollars in his car that dollar bills were blowing around the street, even after some of the bags were burned inside the car after the missile strike, still leaving the remaining ***bags*** of U.S. dollars that were carried away by HAMAS security.

44. Knowing that the U.S. Government distributed cash in Afghanistan, on information and belief the "***bags***" of U.S. dollars carried by Al-Ghouri were provided to HAMAS at the direction of Barack Hussein Obama from the U.S. State Department "slush fund," *infra.*

---

[2]      http://m.voanews.com/a/netanyahu-warns-gazans-to-leave-hamas-sites/2426171.html
[3]      http://www.nytimes.com/2014/08/25/world/middleeast/israel-says-missile-strike-killed-hamas-official-handling-terror-funds.html?_r=0
[4]      *Id.*

45. Defendant Barack Hussein Obama has allowed the "apparent authority" of the Barack H. Obama Foundation to solicit funds – in the understanding of those solicited – in the name of Defendant Barack Hussein Obama and/or with the approval of Defendant Barack Hussein Obama, which funds are in fact used to finance terrorism by HAMAS specifically and the Muslim Brotherhood generally.

46. Defendant Barack Hussein Obama has given his tacit approval to the actions of Malik Obama as the creator and operator of the Barack H. Obama Foundation in Malik Obama raising funds and material support for HAMAS outside of the Barack H. Obama Foundation.  That is, where Malik Obama solicits or encourages funding of and material support to HAMAS without that support flowing through the Barack H. Obama Foundation, Malik Obama's status as the creator and leader of the Barack H. Obama Foundation creates the understanding that he is acting generally with the approval of Defendant Barack Hussein Obama.

47. Defendant Barack Hussein Obama has corruptly misused and abused his position while President of the United States to cause funding and material support to be transferred to HAMAS as a designated Foreign Terrorist Organization.

48. On information and belief, the U.S. Department of State slush fund described in allegations below was used and/or diverted to support HAMAS at the direction of Defendant Barack Hussein Obama, implemented through Secretary Hillary Clinton and later Secretary John Kerry.

49. On information and belief, Defendant Barack Hussein Obama has personally caused military weapons of the United States military, Libyan military and benefactors of the Libyan uprising called the "Arab Spring" to be transferred from the territory of Libya to

the Muslim Brotherhood generally, to Syrian Jihadi terrorists working in collaboration

with HAMAS and directly to HAMAS itself.

50. Defendant Barack Hussein Obama has personally enhanced and encouraged the

intimidation and terrorism of the people of Israel and Jews and Christians present within

Israel by publicly supporting and siding with the Muslim Brotherhood and the Jihadist

militants in Syria known as I.S.I.S. or I.S.I.L., signaling to the people of Israel and Jews

and Christians that HAMAS' crimes against Israel and Jews and Christians are tacitly

supported and approved of by the President of the United States and that Israel cannot

count on any real help to defend itself from HAMAS' criminal activities and attacks upon

Israel and Jews and Christians.

51. In a news report on Egyptian television of a speech by Vice President of the Supreme

Constitutional Court of Egypt, Tehani al-Gebali, [5]  Gebali said she would like "to inform

the American people that their president's brother Obama is one of the architects of the

major investments of the Muslim Brotherhood."

52. "We will carry out the law, and the Americans will not stop us," Gebali said. "We need to

open the files and begin court sessions. The Obama administration cannot stop us; they

know that they supported terrorism," she continued. "We will open the files so these

nations are exposed, to show how they collaborated with [the terrorists]. It is for this

reason that the American administration fights us."

53. The son of Khairat al-Shatter — another top ranking Brotherhood member who was

arrested during the June 2013 revolution that ousted Morsi —threatened to release

---

[5]     http://shoebat.com/2013/08/19/egyptian-official-ties-obamas-brother-to-brotherhood/

documents that would "undermine his [U.S. president Obama's] political future and land him in prison." [6]

54. President Barack Hussein Obama, who is the head of the armed forces, threatened Israel that U.S. aid would be cut off if it does not make peace with HAMAS in light of Muslim civilian casualties in Gaza – thus preventing Israel from ridding the Middle East of this Muslim terrorist scourge by forcing a cease-fire. Now that there is a permanent cease fire, as agreed to on August 27, 2014, it is certain that Defendants will continue to illegally launder American Dollars to HAMAS in the hundreds of millions so that HAMAS can rebuild its arsenal of weaponry to use against Israel and Christians and Jews with the goal of annihilating Israel as part of a Muslim caliphate.

55. Defendant Barack Hussein Obama has personally collaborated with, conspired with, aided and abetted HAMAS' money laundering of funds raised for HAMAS as well as soliciting and encouraging financial and material support through fraudulent "charitable front organizations."

56. Defendant Barack Hussein Obama has personally collaborated with, conspired with, aided and abetted the blackmail, extortion, intimidation, and coercion committed by HAMAS against Israel by personally pressuring Israel to comply with whatever HAMAS as an officially designated Foreign Terrorist Organization and criminal organized crime gang demands, thus amplifying and agreeing with the blackmail, extortion, intimidation, and coercion committed against Israel and Jews and Christians that is illegal as organized crime under RICO.

---

[6]     http://pamelageller.com/2014/08/morsis-wife-threatens-publish-letters-hillary-clinton-exposing-special-relationship-muslim-brotherhood-obama-administration.html/#sthash.IQ1CZdsL.dpuf

57. Defendant Barack Hussein Obama has personally collaborated with, conspired with, aided and abetted the blackmail, extortion, intimidation, and coercion committed by HAMAS against Israel and Jews and Christians by personally interfering with Israel's efforts to defeat HAMAS militarily, thus enhancing and continuing HAMAS' ability to continue in its attacks upon and pressure of Israel.

58. According to Al Jazeera, "During Obama's election campaign he was aided by HAMAS-controlled Gazans manning a phone bank from Gaza." [7]

59. Defendant Barack Hussein Obama assigned a White House staff member specifically to assist HAMAS in its efforts to attack Israel and Jews and Christians: [8]

> "A top adviser to President Obama, (John O Brennan), is the contact person within the White House for communications with the Free Gaza Movement over plans to challenge Israel's blockade of the terrorist HAMAS-controlled Gaza Strip, according to a reputable source close to the Netanyahu government. "
>
> "The anti blockade movement was promoted by a Turkish "charity" IHH which has been designated as a supporter of HAMAS by both Israel and the US. One of the backers of this "charity" is Tariq Ramadan who had been banned from entering the US due to his financial support of HAMAS. Yet Obama believes that "Turkey can have a positive voice in this whole process."

60. HAMAS and its supporters identify close associates of Defendant Barack Hussein Obama as their top supporters in the United States: "The group behind the Gaza flotilla that engaged in deadly clashes with Israeli commandos today counts among its top supporters the friends and associates of President Barack Obama, namely the founders of

---

[7]    http://www.canadafreepress.com/index.php/article/23987
[8]    http://www.wnd.com/index.php?pageId=162377

the Weather Underground terrorist organization, William Ayers and Bernardine Dohrn, as well as Jodie Evans, the leader of the radical activist organization Code Pink." [9]

61. In all of these actions, Defendant Barack Hussein Obama has acted intentionally, knowingly and willfully to assist and promote the interests of HAMAS, because he is motivated to place the interests of the Muslim world and Islamic geopolitical goals ahead of the interests of the United States of America and Jews and Christians specifically.

62. While a person is free to exercise their chosen religion in the United States of America, Defendant Barack Hussein Obama largely attempts to conceal his Islamic religious faith although under Shariah law he is a Muslim, in furtherance of his motivation and he in fact promotes the international foreign policy interests of Islamic nations and interests at the expense of the interests of the United States of America and Jews and Christians.

63. Defendant Barack Hussein Obama, speaking to the Islamic Society of North America, a terrorist-linked network of mosques, said, "Over the last half century, you've upheld the proud legacy of American Muslims' contributions to our national fabric … and [we are] especially grateful to the work done to advance interfaith understanding here at home and around the world."

64. Defendant Barack Hussein Obama claims publicly that he "[has] known Islam on three continents. That experience guides my convictions."

65. Defendant Barack Hussein Obama enrolled in school in Indonesia as a Muslim. [10]  This declaration is significant because the school – as it has publicly admitted and described to journalists in 2008 and since – included mandatory religious observances, ceremonies,

---

[9]    Defendant Barack Hussein Obama gave his first interview as president to an Arab network and stressed his own Muslim background.http://www.wnd.com/index.php?fa=PAGE.view&pageId=160661

[10]    http://web.israelinsider.com/Articles/Politics/13056.htm

and weekly religion classes, and one's choice of religion dictated which religion classes

they attended.   Thus, as a result of enrolling in the school as a Muslim, Obama attended

Islamic ceremonies at the local Mosque and studied and also actually practiced Islam.

66. One of Barack Hussein Obama's classmates in Indonesia, Emirsyah Satar, now CEO of

Garuda Indonesia, said: "He (Obama) was often in the prayer room wearing a 'sarong', at

that time," and "He was quite religious in Islam...." [11]

67. On February 27, 2007, Barack Hussein Obama described the Muslim call to prayer to

journalist Nicholas Kristof of <u>The New York Times</u> [12] as "one of the prettiest sounds on

Earth at sunset."  Obama described to reporter Kristoff how he was once caught making a

face at a classmate during Koran study classes.  Obama then sang for Kristof perfectly the

entire Muslim call to prayer "with a first-class [Arabic] accent," according to Kristoff.

That is, not only is Obama perfectly practiced in the Islamic call to prayer, having

memorized it precisely, but his long years of practicing the Islamic religion is so

extensive that Barack Hussein Obama sings the Muslim call to prayer in melody with a

'flawless' Arabic accent as reported by <u>the New York Times</u>.

68. The lines which Obama has chosen to memorize with a perfect Arabic accent start out:

"Allah is Supreme! Allah is Supreme! Allah is Supreme! Allah is Supreme! I witness that

there is no god but Allah!  I witness that there is no god but Allah! I witness that

Muhammad is his prophet!"  The words express a Muslim's complete acceptance of, and

total commitment to, the message of Islam, which submission is exactly what designates

a person as a Muslim within that religion. According to Islamic scholars, reciting this

---

[11]    http://web.israelinsider.com/Articles/Politics/12745.htm
[12]    http://select.nytimes.com/2007/03/06/opinion/06kristof.html

Muslim declaration of faith is a declaration that one is a Muslim (in submission to Allah). Having attended Islamic religion classes in school, Obama knows all of this.

69. Defendant Barack Hussein Obama is politically skilled enough not to have delved into this topic with a <u>New York Times</u> reporter unless he intentionally wanted to signal to the Muslim world his true beliefs, while hiding behind the practice of "Taqiyya."

70. By contrast, when choosing Catholic Georgetown University as the location for a speech on April 14, 2009, Obama demanded that the Catholic University cover up the Christogram "HIS" – which declares "Iesus Hominum Salvator" ("Jesus, Savior of men" in Latin) – and other symbols of Christianity where he spoke, as reported by NBC News.[13]  He demanded that a Catholic university remove symbols of Jesus Christ.

71. Defendant Barack Hussein Obama has entertained representatives of the Muslim Brotherhood at the White House and publicly embraced various Muslim militants.

72. Defendant Barack Hussein Obama officially told the Parliament of Turkey, now under radical militant Islamic control, that "We will convey our deep appreciation for the Islamic faith, which has done so much over the centuries to shape the world -- including in my own country" [14]

73. As President and Commander in Chief, Defendant Barack Hussein Obama has intentionally and deliberately used the resources of the United States of America government to strengthen the Muslim Brotherhood and HAMAS around the world and to weaken and undermine the security and strength of the United States of America, much as EgyptAir First co-pilot Gameel Al-Batouti (Relief First Officer) dove EgyptAir Flight

---

[13]     http://www.nbcwashington.com/news/local/Jesus-Missing-From-Obamas-Georgetown-Speech.html

[14]     http://www.whitehouse.gov/the-press-office/remarks-president-obama-turkish-parliament

990 into the ocean 60 miles South of Nantucket, Massachusetts, after throttling back the engines and then shutting the engines down, while reciting nine times in Egyptian Arabic "Tawkalt ala Allah" ("I rely on God"). [15]

### B.  Defendant HAMAS and its Relevant Acts and Conspiracy

74. Defendant HAMAS (in Arabic, an acronym for "Harakat Al-Muqawama Al-Islamia" -- Islamic Resistance Movement) is part of the official government of the so called Palestinian territories.

75.  Accordingly, in June 2014, the Palestinian Authority created a "government of national unity" for all of Palestine "backed by the Islamist militant group HAMAS, which the United States and Israel have branded a terrorist organization."  The Washington Post [16]

76. In early 2006 HAMAS won legislative elections in the Palestinian territories, ending the secular Fatah party's hold on the Palestinian Authority and challenging Fatah's leadership of the Palestinian national movement.

77. The United States Department of State and the United States Government has officially and formally designated HAMAS as a "Foreign Terrorist Organization."

78. HAMAS in concert with the other Defendants operates now and for many years has operated continuously a criminal RICO enterprise by a continuous pattern of related felonies committing murder, attempted murder, assault, kidnapping, hostage taking, violence, threats, assault and/or battery with deadly weapons against citizens of Israel and Jews and Christians as well as visitors to Israel financed by falsely and fraudulently

---

[15]     http://www.ntsb.gov/doclib/reports/2002/AAB0201.pdf
[16]     http://www.washingtonpost.com/world/middle_east/palestinians-form-new-unity-government-including-hamas/2014/06/02/c681d5c6-ea46-11e3-9f5c-9075d5508f0a_story.html

recruiting funds within the United States of America ostensibly for humanitarian purposes to help the people of Gaza.

79. HAMAS knowingly, willfully, and unlawfully combines, conspires, confederates and agrees to commit numerous acts of international terrorism and other related criminal activity, including murder, attempted murder, solicitation to commit murder and numerous other acts of international terrorism activities as defined by 18 U.S.C. § 1331 and 18 U.S.C. § 2332 and other related acts of murder, kidnapping, attempted murder, solicitation to commit murder and providing material support to designated Foreign Terrorist Organizations in violation of the federal criminal code of the United States.

80. HAMAS knowingly and intentionally commits violence, attempted murder, murder, kidnapping, terrorism, assault, and military attacks against the civilian populations within the territory of the nation of Israel in an indiscriminate manner, not targeted at any military target or military force, so as to be guilty of war crimes under international law.

81. All members and leaders of HAMAS are fully aware while committing those acts against the civilian populations in the nation of Israel that the civilian populations within the territory of the nation of Israel always include citizens of the United States of America visiting the historic sites of "the Holy Land," doing business in Israel, vacationing in Israel, pursuing religious devotions, studying as students, engaging in charitable activities.

82. HAMAS knowingly and intentionally commits violence, attempted murder, kidnapping, murder, terrorism, assault, and military attacks against the 1.4 million mostly Muslim Israeli Arabs that HAMAS knows are present within the territory of the nation of Israel.

83. HAMAS knowingly and intentionally commits violence, attempted murder, murder, kidnapping, terrorism, assault, and military attacks against citizens of the United States whom HAMAS knows are present within the territory of the nation of Israel.

84. HAMAS knowingly and intentionally commits violence, attempted murder, murder, kidnapping, terrorism, assault, and military attacks against citizens of many nations around the world whom HAMAS knows are present within the territory of the nation of Israel.

85. HAMAS and the Muslim Brotherhood, which is the umbrella parent organization over HAMAS, are "agenda driven" seeking to achieve their own, self-initiated political and territorial goals. Neither HAMAS nor the Muslim Brotherhood are "grievance driven" in response to any actions by other nations or groups, despite their efforts to use grievances in their propaganda. The charter of HAMAS calls for the destruction of Israel and the establishment of an Islamic state in place of Israel.

86. In order to finance and carry out the aforementioned pattern and practice of violent crimes and terrorism, HAMAS has asked Defendants asked for and received funds and other support in and from the United States of America ostensibly as humanitarian aid or charity for the people living in Gaza.

87. The late Sheik Ahmad Yasinat founded HAMAS in late 1987 as part of the first Palestinian Intifada (uprising) by to replace the PLO with a more radical, militant alternative. [17]

88. HAMAS is a Palestinian branch of the world-wide Muslim Brotherhood.

---

[17]    http://fas.org/irp/crs/931014-hamas.htm

89. HAMAS maintains an army called the Izz al-Din al-Qassam Brigades along with its reported 9,000-man paramilitary Executive Force, which both conduct attacks and military operations against Israeli, primarily against civilians, including suicide bombings against civilian targets inside Israel, usually without uniforms or insignia of combatant status as is required under international law to distinguish HAMAS forces from civilians.

90. HAMAS fought a 23-day war with Israel from late December 2008 to January 2009.

91. From November 14-21, 2012, HAMAS fought another war with Israel during which it claimed to have launched more than 1,400 rockets into Israel.

92. Prior to 2012 war, HAMAS fired approximately 750 rockets into Israel, including one that killed three civilians in Kiryat Malachi.

93. A HAMAS imam called for HAMAS to "totally exterminate" the Jews because "wherever the Jews lived, they spread corruption." HAMAS' Al-Aqsa TV intentionally broadcast the speech on July 25, 2014, after being videotaped for broadcast from Deir al-Balah in the central Gaza Strip, Israel National News reports. [18] The Imam declared "Our doctrine in fighting you [the Jews] is that we will totally exterminate you. We will not leave a single one of you alive, because you are alien usurpers of the land and eternal mercenaries."

94. Mr. Sheikh Hassan Yousef is a founding member of HAMAS and its most popular leader.

95. The oldest son of Sheikh Hassan Yousef, Mosab Hassan Yousef, has had an inside view of the deadly terrorist group HAMAS since he was a small boy.

---

[18]     http://www.newsmax.com/Headline/Hamas-imam-exterminate-Jews/2014/07/30/id/585928#ixzz394A4b0sz

96. Mosab Hassan Yousef assisted his father for years in HAMAS' governance and activities, while being groomed to assume his legacy, politics, status, and power

97. Mosab Hassan Yousef has publicly shared his knowledge and experiences about HAMAS including in his book Son of HAMAS and for example in a July 29, 2014, extended interview on the radio show of former Federal prosecutor Mark R. Levin, who is an attorney admitted to practice in this Court according to motions filed in other cases.

98. Mosab Hassan Yousef rejects as a myth suggestions that there are different arms or branches of HAMAS, some of which are terrorist and some otherwise.  There is only one HAMAS, Yousef insists, and it is all the same organization with the same goals.

99.  "HAMAS does not care about the lives of Palestinians, or the lives of Israelis, or Americans; they don't care about their own lives," Mosab Hassan Yousef told CNN in a recent interview. "They consider dying for their ideology a way of worship." [19]

100.      "Their goal is to conquer the globe and build an Islamic state on every inch of the globe," Mosab Hassan Yousef told the website The Right Scoop. "[HAMAS] is willing to sacrifice as many Palestinian lives as it takes." [20]

101.      "HAMAS is not seeking co-existence and compromise. HAMAS is seeking conquest and taking over. And by the way, the destruction of the State of Israel is not HAMAS's final destination," Mosab Hassan Yousef says. "HAMAS's final destination is building the Islamic caliphate, which means an Islamic state under rubble of every other civilization."[21]

---

[19]     http://nypost.com/2014/07/30/israel-praised-by-hamas-co-founders-son/
[20]     http://nypost.com/2014/07/30/israel-praised-by-hamas-co-founders-son/
[21]     http://nypost.com/2014/07/30/israel-praised-by-hamas-co-founders-son/

102.    Amichai Magen has determined through his research, which is publicly known to the Defendants: [22] "HAMAS governs to kill. Every state-like asset seized by HAMAS has since been applied to the cause of jihad. Every kindergarten, school, university and summer camp has been turned into a hub of hatred and radicalization of future generations.  Every truckload of Israeli-supplied steel and cement has gone to construct missiles, rocket launchers, underground bunkers, and military tunnels.  Every dollar, euro, Iranian or Qatari riyal received in aid has been ploughed into building military capabilities and using them. Groups like ISIS have demonstrated nothing like these mobilization capabilities, and it would take them decades of uninterrupted activity to attain them."  Amichai Magen is the head of the Governance and Political Violence Program and Marc and Anita Abramowitz Senior Researcher at the International Institute for Counter- Terrorism of the Lauder School of Government, Diplomacy and Strategy at IDC, Herzliya, as well as Visiting Fellow of the Hoover Institution at Stanford University.

103.    Defendant HAMAS is therefore not precluded from suit by 18 U.S.C. § 2337(2) because it did not act in its official capacity or under color of legal authority for purposes of this count, since HAMAS and its government agents officially deny any terrorist support or activities. Defendant HAMAS is a foreign state whose activities, described herein, were outside the scope of immunity provided by the Foreign Sovereign Immunities Act ("FSIA").

---

[22]    http://www.jpost.com/Opinion/Columnists/The-something-worse-than-Hamas-myth-369496

104.     Defendant HAMAS, by its activities herein, waived its immunity, either explicitly

or by implication, pursuant to 28 U.S.C. § 1605(a)(1). Defendant HAMAS is also liable

pursuant to 28 U.S.C. § 1605A.

C.  **Defendant Malik Obama and His Relevant Acts and Conspiracy**

105.     Defendant Malik Obama is the founder and operator of the Barack H. Obama

Foundation identifying its main offices as being in Arlington, Virginia, [23] in the United

States of America, operated by using the name of his brother President Barack Obama.

106.     Whether Malik Obama has the permission of Defendant Barack Hussein Obama

to use his name in the Barack H. Obama Foundation is unknown, but the President of the

United States has made no effort officially or rhetorically to discourage the apparent

authority of Malik Obama to be raising funds at least with the wink and nod of Defendant

Barack Hussein Obama.

107.     That is, while free to pursue his own life independent of his brother, Malik Obama

has not chosen to run the Malik Obama Foundation but the Barack H. Obama

Foundation.

108.     Thus, Malik Obama is leading people to believe that his efforts are sanctioned by

the President of the United States of America, his brother.

109.     An IRS determination letter dated June 11, 2011, granted retroactive tax-exempt

status only after the group came under fire for having operated as a 501(c)3 foundation

since 2008 without applying to the IRS. [24] [25]

---

[23]     The Foundation identified its address on its annual Form 990 income tax return in the
Spring of 2011 as 4201 Wilson Boulevard, Suite 110-152, Arlington, Virginia 22203.
[24]     http://www.wnd.com/2011/09/342529/

110.     The Barack H. Obama Foundation was approved for tax-deductible status by the Internal Revenue Service in record time, in only a about a month, despite failing to apply by the statutory deadline, while conservative organizations were delayed for years.

111.     As the operator of a tax-deductible non-profit under the laws of the United States of America under IRS section 501(c)(3), Defendant Malik Obama has placed himself under the subject matter and *in personam* jurisdiction of Courts in the United States of America.

112.     Defendant Malik Obama raises funding and other support both through the Barack H. Obama Foundation and through other organizations to facilitate violence, terrorism, and warfare carried out by HAMAS as a branch of the Muslim Brotherhood and by the Muslim Brotherhood generally. See "Report Reveals President Obama's relatives run Charities of Deceit" by Walid Shoebat and Ben Barrack. [26]

113.     Although the Foundation falsely claims to be using funds for charitable and humanitarian purposes, visits to those locations reveal that the claims are fraudulent.  *Id.* [27]

114.     Two leaked classified documents show Egyptian security forces have been monitoring Malik Obama's activities and they also implicate President Obama, Secretary of State Hillary Clinton and former President Bill Clinton in the aiding and abetting of

---

[25]     This very long delay would normally render a non-profit foundation automatically, categorically ineligible by law for recognition of tax-deductible, tax-exempt non-profit status and would automatically convert the Barack H. Obama Foundation to a much less desirable "private foundation" status.  But the delay was "excused" by the IRS, and in record time.

[26]     http://shoebat.com/wp-content/uploads/2013/05/New_IRS_Scandal_052113.pdf

[27]     http://shoebat.com/2013/05/21/explosive-islamic-extremism-and-sex-slaves-courtesy-of-the-irs/

terrorists.  The documents were entered as evidence in the criminal trials of former

Egyptian President Mohammed Morsi and other top Muslim Brotherhood leaders. [28]

115.     Malik Obama's supervision of the Muslim Brotherhood's international

investments implicates the Obama administration in supporting the Muslim Brotherhood,

according to an Egyptian report citing the Vice President of the Supreme Constitutional

Court of Egypt, Tehani al-Gebali:

116.     According to Walid Shoebat and World Net Daily, complaints have been filed

with Egypt's prosecutor-general calling for Malik Obama to be put on Egypt's terror

watch list and brought to Egypt to be questioned by state criminal investigators for

financing terrorism.[29]

117.     Those sources published a photograph of Malik Obama wearing a scarf at a

conference in Yemen in 2010 displaying the slogan "Jerusalem is ours – We are coming."

On information and belief, Malik Obama specifically supports the goal of Muslim

occupation and possession of Jerusalem and supports HAMAS violence as a means to

taking Jerusalem from the Jews and Israel to benefit HAMAS.

118.     Shoebat reports that Malik Obama, as also the executive secretary of the Islamic

Dawa Organization, has operated bank accounts in the Middle East with known ties to al-

Qaida that are being widely utilized to raise money for terrorist activities conducted by

HAMAS in Gaza against Israel and Jews and Christians.

119.     Defendant Malik Obama, on information and belief, from information being

revealed in criminal prosecutions in Egypt of Muslim Brotherhood terrorists, and as

---

[28]     http://www.wnd.com/2014/01/obama-clintons-accused-in-egypt-of-aiding-terrorists/
[29]     http://www.wnd.com/2013/09/egypt-eyes-obamas-brother-for-terror-list/

reported by <u>PJ Media</u>, <u>World Net Daily</u>, former PLO-member [30] and native Arabic-speaking researcher Walid Shoebat has been supporting the terrorist organization HAMAS as a fundraiser for HAMAS and the Muslim Brotherhood, discerned from bank-account information.

120.     Those sources report that Malik Obama's work with the Sudan-based Islamic Dawa Organization has prompted criminal charges in Egypt of Malik Obama aiding and abetting terrorism.

121.     Shoebat ties Bank Account No. 1782 [31],  set up in the Al Shamal Bank – an al-Qaida bank founded in Sudan by Osama bin Laden in 1983 to fund terrorist activities [32] – with the bank account serving the Islamic Dawa Organization.

122.     Shoebat reports that advertising on the Islamic Dawa Organization (IDO) website promotes the accounts at the Al Shamal bank, published in Arabic here [33] and here [34], linking the bank to the Muslim Brotherhood **"Aiding our Brothers in Gaza."**

123.     Malik Obama's IDO, according to Walid Shoebat, is part of the Coalition of Islamic Organizations, which includes the Islamic Society in Gaza, a HAMAS front organization founded by HAMAS terror leader Sheikh Yassin. The society is headed by HAMAS prime minister and terror leader Ismail Haniyeh.

124.     A U.S. State Department Report in 1996 [35] on bin Laden's finances identified the Al Shamal bank as follows: "Bin Laden and wealthy National Islamic Front members

---

[30]     Palestinian Liberation Organization (PLO)
[31]     http://akhawat.islamway.net/forum/index.php?showtopic=251167
[32]     http://www.investigativeproject.org/documents/case_docs/224.pdf
[33]     http://alddawa.org/?page_id=558
[34]     http://aldaawa.info/index.php/1/3072.html
[35]     http://www.outpost-of-freedom.com/bin_ladin.htm

capitalized Al-Shamal Islamic Bank in Khartoum. Bin Laden invested $50 million in the bank."

125.     On information and belief, Malik Obama has knowingly and intentionally diverted and converted funds raised in the USA through the Barack H. Obama Foundation in the name of his brother to provide material support to the conduct of violent and militant jihad by HAMAS and the Muslim Brotherhood against Israel and Jews and Christians.

###     D.   <u>Defendant Hillary Clinton, former Secretary of State, and Relevant Acts and Conspiracy</u>

126.     A public official can be personally liable for abuse, corruption, or misuse of public office.

127.     In her position as a former Secretary of State and United States Senator, Hillary Clinton personally and actually knows that HAMAS is officially designated as a "Foreign Terrorist Organization" by the United States Department of State and in fact engaged and engages in terrorism, including by HAMAS diverting resources supplied by any source designated for any supposed purpose to support HAMAS' terrorist attacks.

128.     Immediately after HAMAS took control of the Palestinian Authority in the January 26, 2006, election, the Middle East Quartet (the United States, Russia, the European Union (EU), and the United Nations) declared that assistance to the Palestinian Authority would only continue if HAMAS renounced violence, recognized Israel, and accepted previous Israeli-Palestinian agreements.  HAMAS refused to comply.

129.     As a result, in early April 2006, the United States and the European Union announced they were halting assistance to the HAMAS-led Palestinian Authority

government. Support to HAMAS even from the United States Government still violates

that policy and decision today.

130.     Yet in violation of this determination and policy of the United States of America,

then Secretary of State Hillary Clinton has caused material support to assist HAMAS.

131.      At the direction of Defendant Barack Hussein Obama and on her own Hillary

Clinton used a discretionary "slush fund" of the United States Department of State under

color of law to funnel money to HAMAS.

132.     In her annual budget request for Congress, presented just seven months before the

Benghazi attacks, Secretary of State Hillary Clinton asked Congress to authorize a $770

million slush fund that could be used at her discretion anywhere in North Africa or the

Middle East. She called this "The Middle East and North Africa Incentive Fund."

133.     Hillary Clinton insisted that the fund be "flexible and easily employed," but

offered no specifics for how it should be used. Hillary Clinton caused funds from the

slush fund to flow to HAMAS specifically and the Muslim Brotherhood generally,

knowing that the funds would be used to buy arms and other military equipment to be

used against Israel and Jews and Christians.

134.     Officially, the State Department has provided no account or report of the use of

the funds.

135.     These actions are more than just coincidental, but intentional.  Nagla Mahmoud,

wife of former Egyptian president Muhammad Morsi is reportedly angry at some

statements made by Hillary Clinton, and "is threatening to expose the special relationship

between her husband and Hillary Clinton, after the latter attacked the ousted [president],

calling him a simpleton who was unfit for the presidency.  Sources close to Nagla

confirmed that she has threatened to publish the letters exchanged between Morsi and Hillary." This is reported in El-Mogaz News, [36]

136.    On information and belief, Hillary Clinton directed that activities at the U.S. Consulate in Benghazi, Libya, and nearby CIA Annex to transfer weapons previously poured into Libya and liberated from the Libyan military to Muslim Brotherhood groups in the Middle East, including in Syria (to what is now ISIS / ISIL) and HAMAS in Gaza.

137.    On information and belief, weapons distributed to Libyan and Syrian insurgents as part of Hillary Clinton and Defendant Barack Hussein Obama's war in Libya and opposition to Syria's strong man leader have directly armed HAMAS in its fight against Israel and Jews and Christians.

138.    On information and belief, both HAMAS in Gaza and the Islamic State spreading across much of Syria and Iraq received weapons through the policies of Hillary Clinton in Libya as Secretary of State, redistributing weapons from the Libyan military, and those supplied to Libyan insurgents from Arab and other Muslim nations and from the United States military, to Muslim Brotherhood terrorists and organizations that include HAMAS.

139.    Meanwhile, while Hillary Clinton was U.S. Secretary of State, her "household" received millions of dollars in pay-offs for her policies and actions as Secretary of State by speaking fees paid to her husband.

140.    Since leaving the White House, the Clinton household has amassed a fortune of over $105 million, including from many nations and interests hostile to Jews and to Israel.

---

[36]    http://www.elmogaz.com/node/174824

141.     The official charged with reviewing those arrangements for conflicts of interest turns out to be a long-time political associate and loyalist of the Clintons, Cheryl Mills:

> "These documents are a bombshell and show how the Clintons turned the State Department into a racket to line their own pockets," said Judicial Watch President Tom Fitton. "How the Obama State Department waived hundreds of ethical conflicts that allowed the Clintons and their businesses to accept money from foreign entities and corporations seeking influence boggles the mind. That former President Clinton trotted the globe collecting huge speaking fees while his wife presided over U.S. foreign policy is an outrage." [37]

142.     The U.S. State Department under Hillary Clinton's leadership and control approved of and facilitated William Clinton's receipt of millions of dollars from anti-Jewish and anti-Israel interests by approving William Clinton's activities in a conflict of interest process.

143.     Plaintiff Larry Klayman originally founded Judicial Watch and later discovered extensive, massive, and sophisticated schemes by the Clintons, orchestrated mainly by Hillary Clinton, to raise political campaign donations by using official government resources and influence.  Judicial Watch's founding came after the discovery that U.S. Secretary of Commerce Ron Brown at then-First Lady Hillary Clinton's direction was selling seats on international trade missions in return for campaign donations to the Clinton/Gore re-election campaign.

144.     Larry Klayman then at Judicial Watch uncovered example after example of the Clintons' use of government office, resources, and influence as mechanisms to obtain money and donations for political campaigns and activities.

---

[37]     http://www.judicialwatch.org/press-room/press-releases/clinton-conflict-of-interest/

145.     Hillary Clinton maintains ties to the Muslim Brotherhood (of which HAMAS is

part) run through Huma Abedin, one of her many counselors connected to the Muslim

Brotherhood.


E.     **Defendant John Kerry, Secretary of State, and His Relevant Acts and Conspiracy**

146.     A public official can be personally liable for abuse, corruption, or misuse of

public office.

147.     In his position as Secretary of State and a former United States Senator, John

Kerry personally and actually knows that HAMAS is officially designated as a "Foreign

Terrorist Organization" by the United States Department of State and in fact engages in

terrorism.

148.     As successor Secretary of State, John Kerry has continued the pattern and

practices of his predecessor Hillary Clinton by providing funding to HAMAS.

149.     Furthermore, Kerry has actively sought to interfere with attempts by Israel to stop

the violence.

150.     The RICO enterprise runs on continued violence and threats by HAMAS.

Therefore, success by Israel in ending the violence would diminish the RICO enterprise.

151.     John Kerry has sought to prevent Israel from ending the violence in Gaza.

152.     Specifically, John Kerry and Defendant Barack Hussein Obama have threatened

to cut off all aid to Israel if Israel continued efforts to stop HAMAS violence against

Israel and Jews and Christians.

153.     John Kerry has corruptly misused and abused his position while Secretary of State to finance HAMAS as a terrorist organization and provided material support to a terrorist organization.

### F.   **Defendant Ban Ki-Moon Secretary General of the United Nations and his Relevant Acts and Conspiracy**

154.     An official of an organization can be personally liable for abuse, corruption, or misuse of public office.

155.     In his position as Secretary General of the United Nations, Ban-Ki-Moon personally and actually knows that HAMAS is officially designated as a "Foreign Terrorist Organization" by the United States Department of State and in fact engages in terrorism, including by HAMAS diverting resources supplied by any source designated for any supposed purpose to support HAMAS' terrorist attacks.

156.     Nevertheless, Ban Ki-Moon has repeatedly provided funds and material support to HAMAS knowing that such funds and material support would be and will be used by HAMAS to commit terrorism, violence, attempted murder, murder, kidnapping, hostage taking, blackmail, intimidation, and property destruction indiscriminately against civilians in neighboring Israel including citizens of the United States and of Israel and many nations.

157.     Ban Ki-Moon has illegally operated the resources and assets of the United Nations to support HAMAS' terrorist activities materially and directly, including by operating United Nations-run "schools" in Gaza as weapons and arms depots and as bases of military operations for HAMAS.

158.     Ban Ki-Moon has operated the resources and assets of the United Nations including public schools run by the United Nations within Gaza to house deadly military rockets used in war crimes of indiscriminate attacks upon civilians.

159.     Eliminating the possibility that HAMAS military would use of United Nations schools was for Ban Ki-Moon not accidental or unknown. For example, when a United Nations school became exposed as HAMAS rockets weapons depot, the United Nations under Ban Ki-Moon's leadership handed those rocket weapons over to HAMAS.

160.     It would strain credulity that the public disclosure of deadly (military) rockets housed in a United Nations school in Gaza would not have demanded the personal attention and decisions of Ban Ki-Moon personally.  Yet Ki-Moon's decision to return the rockets to HAMAS was to ensure that HAMAS kept its rockets to be employed in more indiscriminate attacks against civilian populations within Israel.  Therefore, Ban Ki-Moon knowingly and intentionally used those United Nations schools in Gaza to support, assist, aid and abet, HAMAS' attacks upon civilian populations in Israel.

161.     Moreover, the United Nations has actual knowledge of and gives actual support to the use of United Nations-operated "schools" for warehousing HAMAS weapons and as bases for terrorist attacks upon Israel and Jews and Christians, because it would be impossible for the United Nations staff on site to be unaware that their "schools" were filled with HAMAS weapons, including large-sized rocket weapons.

162.     On information and belief, the United Nations has actual knowledge of and gives actual support to HAMAS by keeping Palestinian children, reportedly as many as 3,000 children, in two schools directly on either side of a United Nation "school" used as a warehouse for HAMAS weaponry and rockets and as a base for HAMAS terrorism.

163.     Because the indiscriminate (untargeted) firing of military rockets on civilian cities and towns in Israel is a war crime, Ban Ki-Moon and the United Nations are guilty of aiding and abetting war crimes committed by HAMAS, by turning over to HAMAS rockets discovered in United Nations "schools."

164.     Ban Ki-Moon is motivated by and harbors antipathy toward Jews and Christians and thus Israel and identifies with Muslims and HAMAS, not just because of his political views but also because he feels no connection or affinity to Jews and Christians and the land of Israel, as he is a Buddhist. He therefore is prone to sympathize with and aid and abet anti-Judeo -Christian interests.

165.     The actions of the Defendants, as pled herein, have caused Israel, on August 27, 2014, to be coerced and bludgeoned into a permanent cease fire with Hamas which will result in further damage including but not limited to the fear of serious injury and death, and serious injury and death to Plaintiffs and others similarly situated.

## VII.        CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Acquisition and Maintenance of an Interest in and Control of*
*an Enterprise Engaged in a Pattern of Racketeering Activity:*
*18 U.S.C. §§ 1961(5), 1962(b)*

166.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

167.     During the ten (10) calendar years preceding August 20, 2014, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

168.     Non-sovereign Defendants are each "persons" within the meaning of the

Racketeer Influenced and Corrupt Organizations Act ("RICO").

169.     Defendants operate as an "enterprise" within the meaning of RICO, the activities

of which effect interstate and foreign commerce.

170.     By virtue of the predicate acts described in this Complaint, including without

limitations: engaging in predicate acts of terrorism, engaging in terrorism, murder,

laundering of monetary instruments, engaging in monetary transactions improperly

derived from unlawful activity, Defendants transferred, received, and supplied financing

and income that was derived, both directly and indirectly, from a pattern of racketeering

activity in which each of them participated as a principal and used and invested, both

directly and indirectly, such income and the proceeds of such income, in establishing and

operating terrorist enterprises in violation of 18 U.S.C. § 1962(a).

171.     As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(a),

Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, suffered the loss

of valuable property, financial services and support, and suffered other pecuniary

damages.

172.     By reason of the wrongful conduct of Defendants, Plaintiffs, acting on behalf of

themselves and their family, Plaintiffs' decedents, suffered conscious pain, suffering,

severe emotional distress and death, and have suffered pecuniary and economic damage,

loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of

society, and other mental and physical injuries.

173.     Plaintiffs further allege that all Defendants did commit two (2) or more of the

offenses itemized above in a manner which they calculated and premeditated

intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra.*

174.      18 U.S.C. § 1964(c) defines "racketeering activity" as follows:

   **(1)** "racketeering activity" means

   (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;

   (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons)., [1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956

(relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials),

(C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501 (c) (relating to embezzlement from union funds),

(D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States,

(E) any act which is indictable under the Currency and Foreign Transactions Reporting Act,

(F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or

(G) any act that is indictable under any provision listed in section 2332b (g)(5)(B);

175.     All Defendants have committed acts indictable for providing funds and material support to a terrorist organization, HAMAS, officially designated by the U.S. Government as a Foreign Terrorist Organization,

176.     All Defendants have committed acts indictable for mail fraud related to soliciting funds and material support ostensibly for humanitarian and charitable purposes with the full knowledge, awareness and/or intent that those funds and material support will be used by HAMAS for the criminal acts of violence identified in detail above.

177.     All Defendants have committed acts indictable for wire fraud related to soliciting funds and material support ostensibly for humanitarian and charitable purposes with the full knowledge, awareness and/or intent that those funds and material support will be used by HAMAS for the criminal acts of violence identified in detail above.

178.     All Defendants have committed acts indictable for violations of the Hobbs Act for directly or indirectly using threats of violence by HAMAS through the criminal acts of violence identified in detail above to coerce and blackmail Israel, the foreign policy of Israel with regard to nations throughout the Middle East and foreign policy of the United States.

179.     All Defendants have committed acts indictable of providing funding and/or material support to a designated Foreign Terrorist Organization, HAMAS.

180.     All Defendants have committed acts indictable for conspiracy to commit murder, attempted murder, assault, violence, kidnapping, hostage taking, and/or violent attacks.

**SECOND CAUSE OF ACTION**
*Conduct and Participation in a RICO Enterprise through a Pattern of*
*Racketeering Activity:  18 U.S.C. §§ 1961(5), 1962(c)*

181.     Plaintiffs repeat and re-allege each and every allegation of the foregoing

paragraphs as if fully set forth herein, and specifically repeat and re-allege the allegations

under the First Cause of Action concerning RICO liability.

182.     All Defendants did associate with a RICO enterprise of individuals who were

associated in fact and who engaged in, and whose activities did affect, interstate and

foreign commerce.

183.     Likewise, all Defendants did conduct and/or participate, either directly or

indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of

racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

184.     During the ten (10) calendar years preceding August 20, 2014, all Defendants did

cooperate jointly and severally in the commission of two (2) or more of the RICO

predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B),

and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

185.     Plaintiff further alleges that all Defendants did commit two (2) or more of the

offenses itemized above in a manner which they calculated and premeditated

intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering

activities, also in violation of the RICO law at 18 U.S.C. 1962(c) *supra*.

**THIRD CAUSE OF ACTION**
*Conspiracy to Engage in a Pattern of Racketeering Activity:*
*18 U.S.C. §§ 1961(5), 1962(d)*

186.     Plaintiffs repeat and re-allege each and every allegation of the foregoing

paragraphs as if fully set forth herein, and specifically repeat and re-allege the allegations

under the First Cause of Action concerning RICO liability.

187.     All Defendants did conspire to acquire and maintain an interest in a RICO

enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§

1962(b) and (d).

188.     During the ten (10) calendar years preceding August 20, 2014, all Defendants did

cooperate jointly and severally in the commission of two (2) or more of the predicate acts

that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

189.     Plaintiffs further allege that all Defendants did commit two (2) or more of the

offenses itemized above in a manner which they calculated and premeditated

intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering

activities, also in violation of 18 U.S.C. 1962(d) (Prohibited activities supra).


**FOURTH CAUSE OF ACTION**
*AIDING AND ABETTING THE MURDER, ATTEMPTED MURDER AND*
*SERIOUS BODILY INJURIES TO UNITED STATES CITIZENS IN VIOLATION*
*OF 18 U.S.C. § 2332(a); 18 U.S.C. § 2332(b); 18 U.S.C. § 2332(c) AND 18 U.S.C. § 2333*

190.     Plaintiffs repeat and re-allege each and every allegation of the foregoing

paragraphs as if fully set forth herein.

191.     Each of the plaintiffs has been injured in his person, property or business by

reason of acts committed by Palestinian terrorists that involve violence or are dangerous

to human life and that violate the criminal laws of the United States, including the

prohibition on killing, attempting to kill, causing serious bodily injury or attempting to cause serious bodily injury to U.S. citizens as set forth in 18 U.S.C. § 2332.

192.     The acts of the Palestinian and HAMAS terrorists in killing, and attempting to kill U.S. nationals and other persons were and are intended (a) to intimidate or coerce the civilian population of Israel, (b) to influence the policy of the government of Israel by intimidation or coercion, and (c) to affect the conduct of the government of Israel by mass destruction and murder.

193.     The acts of terrorism set forth herein are extreme and outrageous and were committed with the knowledge of and intention to cause extreme physical pain and suffering to any and all persons within close proximity of the attack and extreme emotional distress to the family members of those who were killed or injured by reason of those acts.

194.     Each of the Defendants provides substantial assistance to HAMAS and HAMAS' AAMB in recruiting and incentivizing suicide bombers and other terrorists and since money is fungible, in freeing up funds for use in military operations and the commission of violent acts resulting in death and injury, thereby preparing and facilitating acts of terrorism in violation of 18 U.S.C. § 2332 that have caused injuries to the plaintiffs.

195.     Each of the Defendants knows, or has recklessly disregarded, that it is providing material support to HAMAS for acts of international terrorism.

196.      Each of the Defendants knew or recklessly disregarded the fact that the charitable front organizations of the terrorist organizations have played a major role in raising funds for HAMAS, which have committed numerous criminal acts including suicide bombings

intended to intimidate and coerce the civilian population of Israel and to influence the policy of the Israeli Government.

197.     Each of the Defendants knew or recklessly disregarded the fact that their activities alleged above have substantially assisted and encouraged dangerous and criminal acts set forth herein.

198.     By aiding and abetting violations of 18 U.S.C. § 2332 that have caused each of the plaintiffs to be injured in his or her person, property, or business, Defendants are jointly and severally liable pursuant to 18 U.S.C. § 2333 for any and all damages that plaintiffs have sustained as a result of such injuries.

**FIFTH CAUSE OF ACTION**
*CONSPIRACY TO COMMIT MURDER AND ATTEMPTED MURDER OF UNITED STATES CITIZENS IN VIOLATION OF 18 U.S.C. §§ 2332(b) and 2333*

199.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

200.     Each of the plaintiffs has been injured in his person, property or business by reason of acts committed by HAMAS that involved murder or attempted murder in violation of the criminal laws of the United States, including the prohibition on killing or attempting to kill American and dual American-Israeli citizens as set forth in 18 U.S.C. § 2332.

201.     The acts of HAMAS in killing or attempting to kill American and dual American-Israeli citizens and other persons were intended (a) to intimidate or coerce the civilian population of Israel, (b) to influence the policy of the government of Israel by intimidation or coercion, and (c) to affect the conduct of the government of Israel by mass destruction and murder.

202.    The acts of terrorism set forth herein are extreme and outrageous and were committed with the knowledge of, and intention to, cause extreme physical pain and suffering to any and all persons within the close proximity of the attack and extreme emotional distress to the Plaintiffs or the family members of Plaintiffs who were injured or killed by reason of those acts.

203.    Defendants agreed, including by implication or common understanding, to combine with each other, their agents, and other persons to act unlawfully, in the manner set forth in this complaint and committed overt acts in furtherance of the conspiracy.

204.    At all relevant times, Defendants knew of this conspiracy and knew and knows, in particular, of the roles of charitable front organizations and their leaders in furtherance of that conspiracy

205.    At a minimum, Defendants recklessly disregarded the nature and purposes of the conspiracy.

206.    Defendants knowingly and purposefully agreed to perform the acts complained of herein with the knowledge, and for the purpose, that such services facilitate their mutual goals and support terrorist activities pursuant to a common scheme to encourage and incentivize acts of terrorism.

207.    By conspiring to support, encourage and facilitate violations of 18 U.S.C. § 2332 that have injured each Plaintiff's respective person, property, or business, Defendants are jointly and severally liable pursuant to 18 U.S.C. § 2333 for any and all damages that plaintiffs have sustained as a result of such injuries.

## SIXTH CAUSE OF ACTION
### *PROVISION OF MATERIAL SUPPORT TO TERRORISTS IN VIOLATION OF 18 U.S.C. § 2339A AND 18 U.S.C. § 2333*

208.     Plaintiffs repeat and re-allege each and every allegation of the foregoing

paragraphs as if fully set forth herein.

209.     Each of the Defendants provides material support to the preparation and carrying

out of numerous acts of international terrorism which have caused direct injury to the

Plaintiffs.

210.     By participating in the commission of violations of 18 U.S.C. § 2339A that have

caused each of the Plaintiffs to be injured in his or her person, business or property,

Defendants are jointly and severally liable pursuant to 18 U.S.C. § 2333 for any and all

damages that plaintiffs have sustained as a result of such injuries.

211.     As a result of such support to terrorist groups, Defendants violated the law of

nations, established U.S. law, international laws, treaties and norms, including but not

limited to those sections previously set forth: The Declaration on Measures to Eliminate

International Terrorism and citations therein incorporated by reference adopted by the

United Nations General Assembly on December 9, 1994 (GA Res. 49/50); The Anti-

Terror Act, 18 U.S.C. 113B; The Anti-Terrorism and Effective Death Penalty Act, Pub.

L. No. 104-132, 110 Stat. 1214 (1996); The Uniting and Strengthening America by

Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001

("USA Patriot Act"), Pub. L. No. 107-56, 115 Stat. 271 (2001); The Convention on the

Prevention and Punishment of the Crime of Genocide; Art. 2, December 9, 1949, 78

UNTS; International Convention for the Suppression of the Financing of Terrorism, 39

I.L.M. 270 (Dec. 9, 1997); G.A. Res. 54/109, 1 UN Doc A/RES/54/109 (Dec. 1, 1999)

and ratified by over 130 countries (The Financing Convention); United Nations Charter,
59 State. 1031, 3 Bevans 1153 (1945); Universal Declaration of Human Rights, G.A.
Res. 217A (iii), U.N. Doc. A/810 (1948); International Covenant on Civil and Political
Rights, G.A. Res. 2222A(xxi), 21 U.N. Doc., GAOR Supp. (No. 16) at 52 U.N. Doc. A
6316 (1966); Common Article 3 of the 1949 Geneva Convention; Article 4 and 13 of the
1997 Geneva Protocol II; Convention on Combating Bribery of Foreign Public Officials
in International Business Transactions, 37 I.L.M. 1(Dec. 18, 1997); and other
fundamental principles.

212.    The murders of Plaintiffs' decedents were a direct and proximate result of
Defendants conspiring with and providing aid to terrorist organizations, and through their
individual and government acts, as hereinabove alleged, jointly and severally.

213.    Defendants are liable to Plaintiffs in that they aided and abetted, directed, ordered,
requested, paid, were reckless in dealing with, participated in a joint criminal enterprise
with, confirmed, ratified, and conspired with Defendant HAMAS in bringing about and
perpetrating acts of terrorism against Plaintiffs and their decedents.

214.    Defendants and their agents knowingly and substantially assisted Defendant
HAMAS to commit acts that violate established international law and norms and
facilitated the commission of international law violations by providing these terrorist
groups and their collaborations with the tools, money, instrumentalities, and services to
commit these violations with actual or constructive knowledge that those tools,
instrumentalities and services would be used to support HAMAS' criminal activities.

215.    By reason of the wrongful conduct of Defendants, Plaintiffs, acting on behalf of
themselves and their families, Plaintiffs' decedents, suffered conscious pain, suffering,

severe emotional distress and death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

## SEVENTH CAUSE OF ACTION
### *COMMITTING ACTS OF INTERNATIONAL TERRORISM IN VIOLATION OF 18 U.S.C. § 2339B(1) AND 18 U.S.C. § 2333*

216.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

217.     By knowingly transferring funds to agents of HAMAS including "charitable front organizations" as those collecting funds for HAMAS such as the Holy Land Foundation, the Tulkarem Charitable Committee and the Ramallah Charitable Committee, Defendants have provided material support to a designated Foreign Terrorist Organization under the Anti-Terrorism and Effective Death Penalty Act of 1996 in violation of 18 U.S.C. §§ 2339B(2)(a) and 2339B(2)(b).

218.     Defendants knew of the unlawful activities of HAMAS but also knew or recklessly disregarded its actual designation as a Foreign Terrorist Organization.

219.     By providing material support to a designated Foreign Terrorist Organization, Defendants are civilly liable for damages to plaintiffs for their injuries pursuant to 18 U.S.C.§ 2333.

## EIGHTH CAUSE OF ACTION
### FINANCING OF TERRORISM IN VIOLATION OF 18 U.S.C. § 2339C and 18 U.S.C. § 2333

220.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

221.     Defendants willfully and unlawfully provided funds to HAMAS with the knowledge that such funds have been and will be used, in part, to facilitate acts intended to cause death or serious bodily injury to civilians such as the victims of the terrorist acts described in this complaint, who were not taking part in any armed conflict.

222.     The acts committed against the plaintiffs were intended (a) to intimidate or coerce the civilian population of Israel, (b) to influence the policy of the government of Israel by intimidation or coercion, and (c) to affect the conduct of the government of Israel by mass destruction and murder.

223.     As set forth more fully above, but for the assistance provided by the Defendants, HAMAS' unlawful activities would have been substantially more difficult to accomplish.

224.     By willfully violating 18 U.S.C. § 2339C, Defendants are jointly and severally liable to the plaintiffs who have suffered injuries to their business, person or property by reason of such acts under 18 U.S.C. § 2333.

## NINTH CAUSE OF ACTION
## COMMITTING ACTS OF INTERNATIONAL TERRORISM
## IN VIOLATION OF 18. U.S.C. § 2333

225.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

226.     Defendants' acts of funding HAMAS were "a criminal violation if committed within the jurisdiction of the United States or of any State" and "appear to be intended to intimidate or coerce a civilian population . . . to influence the policy of a government by intimidation or coercion or to affect the conduct of a government by mass destruction" within the meaning of 18 U.S.C. § 2331.

227.      The financial support that Defendants provided to HAMAS provides substantial

assistance in recruiting and incentivizing suicide bombers and other terrorists and thereby

preparing and facilitating acts of international terrorism in violation of 18 U.S.C. § 2333

that have caused injuries to the Plaintiffs.

228.      Defendant's acts were dangerous to human life, by their nature and as evidenced

by their consequences.

229.      Defendants' acts either occurred primarily outside the territorial jurisdiction of the

United States or transcended national boundaries in terms of the means by which they

were accomplished.

230.      Accordingly, the Defendants' acts constitute acts of international terrorism as

defined by 18 U.S.C. §§ 2331 and 2333.

231.      Defendants knowingly provided substantial assistance to acts of international

terrorism and accordingly, its acts constitute aiding and abetting acts of international

terrorism.

232.      Defendants also agreed to combine with other persons to act unlawfully in the

manner set forth above and committed overt acts in furtherance of the conspiracy.

233.      At all relevant times, Defendants knew of the conspiracy and knew, and knows, in

particular, of the roles of the charitable front organizations and their leaders in

furtherance of that conspiracy.

234.      The acts of terrorism by the Defendants set forth herein are extreme and

outrageous and were committed with the knowledge of and intention to cause extreme

physical pain and suffering to any and all persons within close proximity of the attack

and extreme emotional distress to the family members of those who were killed or injured by reason of those acts.

235.     Throughout the period in which Defendants have been assisting HAMAS the Defendants knew or recklessly disregarded the fact that those activities have substantially assisted and encouraged dangerous and criminal acts set forth herein.

236.     For the reasons set forth above, Defendants are civilly liable for damages to plaintiffs for injuries to their person, person, property or business by reason of the acts of international terrorism pursuant to 18 U.S.C. § 2333.

## TENTH CAUSE OF ACTION
### *ASSAULT AND BATTERY*

237.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

238.     Defendants have placed Plaintiffs and/or Plaintiffs' decedents in apprehension of an imminent harmful or offensive contact, and suffered harmful, offensive bodily contact, from which Plaintiffs' decedents ultimately died.

239.     By reason of the wrongful conduct of Defendants, Plaintiffs and Plaintiffs' decedents suffered conscious pain, suffering, severe emotional distress and the fear of imminent serious bodily injury or death, and have suffered pecuniary and economic damage, loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of society, and other mental and physical injuries.

## ELEVENTH CAUSE OF ACTION
### *WRONGFUL DEATH*

240.     Plaintiffs repeat and re-allege each and every allegation of the foregoing

paragraphs as if fully set forth herein.

241.     Defendants were responsible directly and indirectly for the deaths of Plaintiffs'

family and decedents

242.     The deaths of the Plaintiffs' decedents were a result of negligence or unlawful

actions on the part of Defendants.

243.     By reason of the wrongful conduct of Defendants, Plaintiffs, on behalf of

themselves and their family and Plaintiffs' decedents, suffered conscious pain, suffering,

severe emotional distress and death, and have suffered pecuniary and economic damage,

loss of support, loss of nurture, care and guidance, grief, anguish, loss of services, loss of

society, and other mental and physical injuries.


## TWELFTH CAUSE OF ACTION
### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

244.     Plaintiffs repeat and re-allege each and every allegation of the foregoing

paragraphs as if fully set forth herein.

245.     Defendants' acts of funding and/or carrying out the activities of HAMAS were

willful malicious, deliberate, or were done with reckless indifference to the likelihood

that such behavior would cause severe emotional distress and with utter disregard for the

consequences of such actions.

246.     The acts of terrorism set forth herein were committed with the knowledge of and

intention to cause extreme physical pain and suffering to any and all persons within close

proximity of the attack and extreme emotional distress to the Plaintiffs and/or family

members of those who were killed or injured by reason of those acts, or were done with reckless indifference to the likelihood that such behavior would cause such severe emotional distress and with utter disregard for the consequences of such actions.

247.   Defendants' conduct was unreasonable and outrageous and exceeds the bounds usually tolerated by decent society, and was done willfully, maliciously and deliberately, or with reckless indifference, to cause Plaintiffs severe mental and emotional pain, distress, and anguish and loss of enjoyment of life.

248.   As a direct, foreseeable and proximate result of the conduct of Defendant as alleged hereinabove, plaintiffs have suffered non-pecuniary damages in amounts to be proven at trial.

249.   Defendants' undertook their actions willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct, foreseeable, and proximate result thereof plaintiffs suffered economic and emotional damage in a total amount to be proven at trial, therefore plaintiffs seeks punitive damages in an amount sufficient to deter Defendants and others from similar future wrongful conduct.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, demand judgment be entered against Defendants each and every one of them, jointly and severally, for compensatory and actual damages because of their demonstrable physical and emotional injury to Plaintiffs and Plaintiffs' decedents, punitive damages because of Defendants callous and reckless indifference and malicious acts, and attorneys fees, costs, an award in excess of $500,000,000.00 or $1,500,000,000.00 in trebled damages where appropriate, punitive damages, and such other relief the Court may deem just and proper.

## JURY DEMAND

**Plaintiffs, on behalf of themselves and their sons, Plaintiffs' decedents, respectfully demand a jury trial on all issues so triable.**

Dated: August 28, 2014

Respectfully submitted,

Larry Klayman, Esq.
D.C. Bar No. 334581
Freedom Watch, Inc.
2020 Pennsylvania Avenue N.W.
Suite 345
Washington, D.C. 20006
(310) 595-0800
leklayman@gmail.com

Attorney for Plaintiffs, on behalf of
themselves and Plaintiffs' decedents.